```
               UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
                   SAN ANTONIO DIVISION


COLUMBIA MUTUAL INSURANCE      *
COMPANY,                       *
                               *
          Plaintiff,           *
                               *   CIVIL NO. SA-16-CA-00973-XR
v.                             *
                               *
KERRVILLE PROFESSIONAL         *
PROPERTIES, LTD.,              *
                               *
          Defendant.           *
```

## **O R D E R**

Columbia Mutual Insurance Company ("Columbia") instituted this lawsuit against Kerrville Professional Properties, Ltd. ("KPP") seeking a declaratory judgment that it is not liable under a commercial insurance policy issued by Columbia to KPP for damage to the roofs of five buildings during a hail storm on June 1, 2016. Columbia declined to cover the damage based upon a Policy provision for Exclusion of Cosmetic Damage to Metal Roof Coverings Caused By Hail. Columbia seeks a declaration that KPP is not entitled to payment under the Policy. KPP has filed a counterclaim for breach of contract, bad faith and for unfair claims settlement practices under the Texas Insurance Code. KPP has submitted interrogatories and requests for production, to which Columbia has objected. KPP

has filed a motion to compel (docket nos. 28, 32), to which motion Columbia has responded. (Docket no. 31).

## Background

According to the motion to compel, Columbia insured five of KPP's buildings. The roofs of KPP's buildings sustained damage caused by hail, as large as 2½ to 3 inches, on or about June 1, 2016. All Weather Roofing and Remodeling ("All Weather") determined the roofs had sustained significant damage in the hail storm and required replacement. Columbia sent an adjuster to inspect the roofs who initially agreed the roofs required replacement. Columbia then demanded another inspection by an engineering firm, Rimkus Consulting Group, Inc. After a visual inspection, Rimkus agreed that the roofs had been damaged by hail up to 3 inches in diameter. However, in its September 15, 2016 report, Rimkus opined that the damage was simply "the cosmetic effect of hailstone impact."

Based on the report from Rimkus, Columbia denied the vast majority of KPP's claim by letter dated September 19, 2016. According to Columbia, the damage to KPP's buildings fell under the "Cosmetic Damage Exclusion." The Cosmetic Damage Exclusion excludes "damage that alters the physical appearance of the roof covering but does not result in damage that allows the penetration of water through the roof covering or does not result in the failure of the roof covering to perform its

2

intended function, to keep out elements over an extended period of time." Two weeks after Rimkus issued its report, Columbia sued KPP. KPP has answered, and filed compulsory counterclaims for breach of contract, bad faith, and unfair claims settlement practices.

## Standard of Review

Federal Rule of Civil Procedure 26, as amended, governs the scope of permissible discovery, providing that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**FED.R.CIV.P. 26(b)(1).** A party seeking discovery may move for an order compelling production against a party that has failed to answer an interrogatory or to produce documents requested pursuant to Federal Rules of Civil Procedure 33 and 34. ***See*** **FED.R.CIV.P. 37(a)(3)(B)(iii)-(iv).** "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." **FED.R.CIV.P. 37(a)(4).**

To prevail on a motion to compel or resist a motion for protective order, the party seeking discovery may well need to

3

make its own showing of many or all of the proportionality factors set out in Rule 26(b)(1); however, a party resisting discovery still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address--insofar as that information is available to it--the factors enumerated in Rule 26(b)(1). ***Areizaga v. ADW Corp.***, 314 F.R.D. 428, 435 (N.D.Tex. 2016)(*citing* **FED.R.CIV.P. 26(b)(1)**). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. ***Samsung Electronics America Inc. v. Yang Kun "Michael" Chung***, --- F.R.D. ---, 2017 WL 896897 at *9, N.D.Tex. Mar. 07, 2017). General or boilerplate objections are invalid, and "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." ***Id***. (*quoting* ***OrchestrateHR, Inc. v. Trombetta***, 178 F.Supp.3d 476, 507 (N.D.Tex. 2016)).

## Analysis

In general, KPP wants the Court to overrule Columbia's objections and compel Columbia to produce documents germane to:

(a) Columbia's underwriting file;

4

(b) documents concerning the engineers retained by Columbia to evaluate KPP's claim; and,

(c) documents concerning how Columbia's claims department handles claims involving the cosmetic damage exclusion.

> **REQUEST NO. 8**: The underwriting files referring or relating in any way to the policy at issue in this case, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

KPP contends that Columbia's underwriting file is relevant because it contains Columbia's understanding of how the Cosmetic Damage Exclusion affects the coverage purchased by KPP and because it contains correspondence related to the Cosmetic Damage Exclusion.  KPP states that whether Columbia acted consistent with its own understanding of the Cosmetic Damage Exclusion is directly relevant to KPP's breach of contract and bad faith claims.  Columbia responds that underwriting relates to an insurer's decision to provide insurance, including issues such as risk assessment and premium setting.  Columbia states there are no issues regarding the validity of the Policy, sufficiency of coverage or premium amount in this action. Columbia also represents to KPP that the underwriting file does not contain information regarding Columbia's construction or understanding of the subject exclusion.  (Affidavit of Philip Foley, exh. F, ¶ 9).  As to Request No. 8, the motion to compel is **DENIED**.

> **REQUEST NO. 26**: The documents reflecting reserves applied to the subject claims.

KPP asserts that this request is relevant on the matter of how Columbia set the amount it would pay KPP and determining whether the claim was handled pretextually and improperly denied.

> **REQUEST NO. 31**: If a third-party engineer evaluated the subject Property, including without limitation, Rimkus Consulting Group, provide the documents that show the number of other matters in which the same engineers were retained by you to evaluate other properties over the past five years.
>
> **REQUEST NO. 48**: Documents sufficient to identify each claim for hail damage on a policy, containing a cosmetic damage exclusion, in which Rimkus Consulting Group has opined that there was hail damage on a metal roof in the last five (5) years.
>
> **REQUEST NO. 49**: All reports received from Rimkus Consulting Group on each claim for hail damage on a policy, containing a cosmetic damage exclusion, that there was hail damage on a metal roof in the last five (5) years.

KPP states that these requests are directly relevant to the reliability of Columbia's investigation and the bias of the experts hired to examine KPP's roofs.

> **REQUEST NO. 50**: Documents sufficient to identify each claim for hail damage on a policy, containing a cosmetic damage exclusion, which Columbia Mutual received on a property located in Tornado Alley asserting that there was hail damage on a metal roof in the last five (5) years.
>
> **REQUEST NO. 51**: Documents sufficient to the premium dollars received on each policy, the subject of a claim for hail damage on a policy containing a cosmetic damage exclusion, on a property located in Tornado Alley with a metal roof in the last five (5) years.
>
> **REQUEST NO. 52**: Documents sufficient to identify each claim for hail damage on a policy, containing a cosmetic damage

6

> exclusion, which Columbia Mutual accepted that there was hail damage to a metal roof on property located in Tornado Alley in the last five (5) years.
>
> **REQUEST NO. 53:** The document through which there was a denial of each claim for hail damage on a policy, containing a cosmetic damage exclusion, for a metal roof on property located in Tornado Alley in the last five (5) years.

KPP states that these documents relate directly to how Columbia handles claims similar to KPP's, and whether Columbia has a pattern of denying those claims. The information allegedly also goes directly to the credibility of Columbia's investigation and claim decision, as well as KPP's claims for bad faith and violations of the contract and Texas Insurance Code. KPP states it will show how and whether Columbia treated KPP's claim differently than others, and thus tend to show whether or not it was handled properly. KPP asserts that this information is particularly relevant because Columbia claims it does not have any policies or procedures setting forth how hail claims are handled, so KPP is entitled to compare Columbia's handling of its claim to its handling of others to evaluate reasonableness.

    KPP also wants the Court to overrule Columbia's objections and compel Columbia to answer interrogatories inquiring about:

    (a) the identity and kinds of documents Columbia typically generates for handling claims;

    (b) information concerning the adjusters retained by Columbia to evaluate KPP's claim;

  (c) information concerning the engineers retained by Columbia to evaluate KPP's claim; and,

  (d) information concerning Columbia and hail claims.

> **INTERROGATORY NO. 9**: From January 1, 2010 to the present, what documents (including those maintained electronically) relating to the investigation or handling of a claim for hailstorm insurance benefits in Tornado Alley are routinely generated during the course of the investigation and handling of a claim by you (e.g. Investigation reports; z-records; reserves sheet; electronic claims diary; a claims review report; team controversion report)?

KPP states it wants to compare what information Columbia routinely generates, as compared to what information was actually generated during the investigation of KPP's claim, in determining whether Columbia breached the policy, and whether Columbia violated the Texas Insurance Code.  The motion to compel is **GRANTED** for the time period January 1, 2012 to the present.

> **INTERROGATORY NO. 13**: Concerning your evaluation of the performance of the adjusters involved in handling the Claim, please:
>
>   a. state what performance measures are used;
>
>   b. describe your bonus or incentive plan for adjusters;
>
>   c. identify all of your management personnel evaluating such performance; and
>
>   d. identify all documents generated or received in connection with such evaluation, including without limitation the results thereof.

8

KPP contends that this Interrogatory seeks information that will allow KPP to evaluate the competency of the adjusters assigned to KPP's claim, and, thus, whether Columbia was justified in relying on their judgment. According to KPP, the information sought also relates to how the adjusters are compensated, and what role their compensation may have played in the decision to deny KPP's claim.

> **INTERROGATORY NO. 16**: In the past five (5) years regarding Rimkus Consulting Group, please:
>
> a. state the number of claims on which Rimkus Consulting Group, Inc. has consulted for you or on your behalf;
>
> b. state the amount of money you have paid Rimkus Consulting Group, Inc., including, payments made indirectly to Rimkus Consulting Group, Inc., through an independent adjuster, an attorney or any other intermediary;
>
> c. identify the claim(s) on policies containing a cosmetic damage exclusion in which Rimkus Consulting Group, Inc. has opined that hail damaged a metal roof on an insured premises;
>
> d. identify all documents generated or received in connection with the claims identified in (c) above; and,
>
> e. identify the Rimkus Consulting Group, Inc. personnel who had the opinion on hail damage inquired about in (c) above.

KPP states that tis Interrogatory requests information directly relevant to the reliability of Columbia's investigation and the bias of the experts hired to examine KPP's roofs. KPP asserts

that how often and under what circumstances Columbia hires Rimkus could show potential bias on the part of Rimkus.

> **INTERROGATORY NO. 17**: In the past five (5) years in Tornado Alley regarding hail claims involving metal roofs, please:
>
> a. state the number of claims you have received on policies containing a cosmetic damage exclusion;
>
> b. state the amount of premium dollars you have received on the policies the subject of the claims referred to in (a) above;
>
> c. identify the claim(s) on policies, containing a cosmetic damage exclusion, in which you have accepted the claim that hail damaged a metal roof on an insured premises;
>
> d. identify all documents generated or received in connection with the claims identified in (c) above; and,
>
> e. identify your personnel who had the opinion on hail damage inquired about in (c) above.

KPP contends that these documents relate directly to how Columbia handles claims similar to KPP's, and whether Columbia has a pattern of denying those claims. KPP argues that the information goes directly to the credibility of Columbia's investigation and claim decision, as well as KPP's claims for bad faith and violations of the contract and Texas Insurance Code. Again, KPP claim it will show how and whether Columbia treated KPP's claim differently than others, and, thus, tend to show whether or not it was handled properly. KPP again asserts that this information is particularly relevant because Columbia claims it does not have any policies or procedures setting forth

10

how hail claims are handled, so KPP is entitled to compare Columbia's handling of its claim to its handling of others to evaluate reasonableness.

The Court agrees with Columbia that this case involves a relatively straightforward dispute regarding the claimed damage to KPP's property. Apparently, there is no dispute that the roofs were damaged by hail. The issue is the application of the Cosmetic Damage Exclusion which excludes "damage that alters the physical appearance of the roof covering but does not result in damage that allows the penetration of water through the roof covering or does not result in the failure of the roof covering to perform its intended function, to keep out elements over an extended period of time." If the answer is "yes," Columbia is not responsible under the policy.

The discovery sought by KPP is not relevant to that issue. KPP desires information on Columbia's reserves to determine if "the claim was handled pretextually;" on other metal roof claims handled by Rimkus Consulting Group to determine "the reliability of Columbia's investigation and the bias of the experts hired to examine KPP's roofs;" on similar claims handled by Columbia to determine "if Columbia has a pattern of denying those claims," "the credibility of Columbia's investigation and claim decision, as well as KPP's claims for bad faith and violations of the contract and Texas Insurance Code," "whether Columbia treated

11

KPP's claim differently than others," and "to compare Columbia's handling of its claim to its handling of others to evaluate reasonableness;" information about the adjusters and Rimkus Consulting Group to "allow KPP to evaluate the competency of the adjusters assigned to KPP's claim, and, thus, whether Columbia was justified in relying on their judgment," and "the bias of the experts hired to examine KPP's roofs."

Information about other claims is irrelevant to the claim before this Court. An insurer's overpayment, underpayment, or proper payment of the claims of unrelated third parties is not probative of its conduct with respect to the undervaluation claims at issue in the instant case. ***In re National Lloyds Insurance Company***, 449 S.W.3d 486, 489 (Tex. 2014). As noted by Columbia, other claims arose in entirely different factual contexts from the ones at issue here, and could involve different policy terms or a different type of policy. ***See id.*** (there are so many variables associated with a particular claim, such as when the claim was filed, the condition of the property at the time of filing [including the presence of any preexisting damage], and the type and extent of damage inflicted by the covered event). ***See Dizdar v. State Farm Lloyds***, No. 7:14-CV-4022015 WL 12780640, at *5 (S.D.Tex. Jan. 21, 2015). In the absence of reason to believe that the adjusters on KPP's claim were biased, incompetent or unqualified, KPP is simply shooting

12

in the dark with its discovery requests. The Court certainly hopes Columbia treated KPP's claim differently than others whose factual circumstances were undoubtedly different.

Rule 26(b)(1), Fed.R.Civ.P., now requires that discovery be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Philip Foley, the Corporate Claim Manager for Columbia who is responsible for obtaining documents and information to be produced by Columbia in this action, testifies by affidavit that the information sought by KPP, to the extent that it exists, is stored in various offices. He asserts that, due to the breadth of KPP's requests, which are generally not limited as to time period or geographic location, and the fact that Columbia conducts business in various states, responding to the discovery requests would be extremely burdensome.

Foley avers that Columbia maintains separate records and does not categorize claims according to the classifications depicted by KPP, nor does Columbia maintain a comprehensive electronic database that could be relied upon to locate all responsive information and/or documents. A search of Columbia's

13

electronic database would not identify all hail damage claims, premium dollars on policies containing a cosmetic damage exclusion, claims involving a cosmetic damage exclusion or claims denied based on a cosmetic damage exclusion.  Therefore, to locate the requested information and documents, Columbia would need to manually review thousands of files pertaining to thousands of claims located at multiple offices and/or numerous offsite archive facilities.  Such a search would require an incalculable amount of time, greatly disrupt Columbia's business operations and result in an enormous expense.

Similarly, Foley testifies that KPP's discovery requests regarding engineers and evaluation of adjusters seek information that is generally not limited by time or geographic location.  To the extent this information and documents exist, they are not stored in one central location.  A search of Columbia's electronic database would not identify all claims in which a specific engineering firm or adjuster was involved.  Therefore, Columbia would need to search thousands of files pertaining to thousands of claims located at numerous offices and/or offsite archive facilities.  Such a search would also greatly disrupt Columbia's business operations and result in an enormous expense.

Foley further states that it would, therefore, be necessary for Columbia to conduct an unduly burdensome search of records

at several different locations. Furthermore, much of the information sought would be interwoven with information consisting of matters that are private, confidential, proprietary and/or privileged, requiring a separate review by counsel. Indeed, some claims are resolved through negotiation and/or litigation and Columbia is prohibited from disclosing any information about such claims due to confidentiality agreements. This would add considerable time, constraints and expense in complying with KPP's disputed discovery requests.

Foley attests that Columbia does not employ any individuals whose job responsibilities encompass specifically reviewing files for litigation purposes. In order for Columbia to perform the significant work required to respond to KPP's disputed discovery requests, it would be necessary for him to work full-time on that project and utilize numerous additional staff. This would be detrimental to the discharge of his other responsibilities and to the business interests of Columbia. Such an effort would be prohibitive and cost Columbia several tens of thousands of dollars in fees and lost employee productivity to accomplish.

Most of the discovery sought by KPP relates to issues other than the breach of contract claim. KPP contends that the discovery requests are relevant to its bad faith claims and causes of action for unfair claims settlement practices under

the Texas Insurance Code. However, simply presenting such claims does not justify unbridled discovery.

In Texas, "[a] breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995)(*citing* *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)). Here, Columbia retained an adjuster to inspect the property and concluded that the damage was only cosmetic. "[A]n insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pre-textual basis for denial." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). However, KPP has neither alleged nor presented facts suggesting that Columbia did so in this case.

In its Amended Answer and Counterclaim (docket no. 10), KPP alleges only that one of Columbia's adjusters, Aspen Claims Service, inspected the roofs and indicated they experienced such significant and extensive hail damage that the roofs no longer performed as intended. Thereafter, however, Columbia sought an engineering analysis by Rimkus Consulting Group, Inc. KPP

16

refers to unspecified false statements and partial truths in a letter written by Columbia dated August 1, 2016.

None of the discovery sought by KPP is designed to elicit information that Columbia acted in bad faith *in denying KPP's claim*. KPP's allegation that Columbia sought the engineering report as a pretext for denying the claim is mere speculation. A different expert could very well provide a different conclusion concerning the extent of the hail damage and whether the roofs can no longer perform as intended. However, nothing in KPP's allegations suggest the absence of a reasonable basis for denying or delaying payment of benefits. Therefore, KPP's claims for bad faith and under the Texas Insurance Code are questionable, at best. ***See Hahn v. United Fire and Casualty Company***, No. 6:15-CV-00218 RP, 2017 WL 1289024, at *9-11 (W.D.Tex. April 6, 2017).

In light of the fact that the information sought is not relevant to the primary claim of breach of contract, the failure of KPP to establish that the discovery sought has a factually-based bearing on its other legal claims, and the enormous burden imposed on Columbia in time and money in producing the discovery, KPP's motion to compel is, unless otherwise specified, **DENIED**.

It is so **ORDERED**.

**SIGNED** this July 12, 2017

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE